IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROBERT D. JOHNSON,              )    CASE NO.  1:20-CV-00018-DAP
                                        )
            Plaintiff,            )
                                          )    JUDGE DAN AARON POLSTER
        vs.                    )    UNITED STATES DISTRICT JUDGE
                                          )
WARDEN DOUGLAS FENDER,      )    MAGISTRATE JUDGE
                                          )    JONATHAN D. GREENBERG
           Defendant.     )
                                          )    **REPORT & RECOMMENDATION**
                                          )

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Robert Johnson ("Johnson" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Johnson is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Johnson*, Cuyahoga County Court of Common Pleas Case No. CR-17-614774-A.  For the following reasons, the undersigned recommends that the Petition be DISMISSED IN PART AND DENIED IN PART.

## I.    Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Johnson's conviction as follows:

1

{¶ 2}  In  2017, Johnson  was  charged  with  attempted  rape,  aggravated burglary, burglary, abduction, assault, and criminal damaging stemming from an incident with his former girlfriend, B.B. The case proceeded to a jury trial, at which the following pertinent evidence was presented.

{¶ 3} In February of 2017, B.B. lived with her four children in a Cleveland Heights duplex. B.B. and her children lived in the bottom portion of the house. Their portion of the house had an entrance into the living room in the front of the house and an entrance from a side stairway outside the kitchen.

{¶ 4} B.B.  met Johnson,  and  they  dated  off  and  on  for  four  years.  The relationship  ended  in  December  2016.  At  the  time,  B.B.  was  pregnant with  Johnson's  child  and  was  debating  about  whether  to  terminate  the pregnancy.  On  the  night  of  February  22,  2017,  Johnson  tried  to  contact B.B. about the "baby situation" via phone calls and text but she stopped answering. Johnson  arrived  at  B.B.'s  house  around  11:00  p.m.  and  an argument ensued. Johnson stood outside on the porch, and B.B. yelled at him from  inside  the  house,  telling  him  to  leave.  B.B.  called  the  police after Johnson broke the front window and rammed the outer front door with his  body  weight  trying  to  get  into  her  house.  Johnson  physically  broke through the outer front door and unsuccessfully attempted to break through the inside door. He left after he was unable to get inside.

{¶ 5} The police arrived, and B.B. showed them the damage to the house. B.B.  told  the  police  that  she  did  not  want  Johnson  there  and  would  pursue charges  against  him  if  the  police  found  him.  The  police  looked for Johnson but were unable to locate him.

{¶ 6} The next day, B.B. helped her landlord fix the damaged window and door. B.B. went to bed around 11:00 p.m. or midnight. B.B. slept in the living room, and her children slept in the two bedrooms at the back of the house. Around 3:30 or 4:00 a.m., B.B. woke up to her phone ringing and incoming text messages, all from Johnson. B.B. silenced her cell phone and then  heard  a  knock  at  the  window.  Johnson  was  standing  at  the  window watching B.B. ignore the phone calls and text messages: "he was mad that I was literally ignoring him in his face, as he said."

{¶ 7} Johnson told  B.B.  to  answer  the  door,  and  she  told Johnson to leave. B.B. asked Johnson why he was there and told him she was calling the police. Johnson told B.B. "that if I didn't let him in that he was going to break all my windows, and that he also — if he couldn't come in, then I couldn't live there."

{¶ 8} Johnson was carrying a weighted exercise bar that B.B. recognized as a bar he used to do pull-ups. Johnson started breaking windows to the house using the end of the bar. He pushed out the plexiglass window of the back

2

outside door and opened the outer back door. B.B.'s children woke up and started screaming. Johnson then left.

{¶ 9} Johnson returned a short time later while B.B. was consoling her children in the kitchen. According to B.B., Johnson told her he went to the store and, "he had thought about it, I needed to give him some [sex] so he could go to work, and he would leave me alone."

{¶ 10} B.B. saw the exercise bar come through the kitchen door, followed by Johnson. B.B. screamed at Johnson, who told her all she had to do was have sex with him and he would leave. B.B. ran to push him out of the house, and a struggle ensued in the landing of the kitchen stairway. Johnson ripped B.B.'s dress off and threw it outside. Johnson told B.B.'s children to get to the back of the house and leave them alone. According to B.B., Johnson threatened the children that if they did not go to the back of the house, he would beat them. Johnson pinned B.B. against the wall and started to remove his own clothes. The struggle moved through the kitchen, dining room, and into the living room.

{¶ 11} At one point, Johnson had his hands around B.B.'s neck. During the assault, Johnson pulled out all of B.B.'s hair extensions, and B.B. testified that it "hurt."

{¶ 12} X.B., B.B.'s oldest child, came out of his bedroom to see what was going on. X.B. saw Johnson on top of his mother with his mother trying to push Johnson off. Both his mother and Johnson were naked. X.B. called the police. B.B. saw a searchlight and bit Johnson. B.B. was able to get up, run to a broken window, and screamed for help. Although it is unclear from the record what happened next, at some point B.B. was able to push Johnson out the kitchen door.

{¶ 13} B.B. went to see a doctor after the incident "for a checkup to make sure I was okay" because she had "scratches and bruises." B.B. testified that she was afraid for her as well as her children's lives during the ordeal.

{¶ 14} Detective Michael Mathis ("Detective Mathis") of the Cleveland Heights Police Department arrived on scene while Johnson was banging on B.B.'s inner back door, asking to be let in so they could have sex. Johnson was naked. The detective detained him. Detectives Mathis and Earl Pierson interviewed Johnson. Johnson told the police he took an Uber to B.B.'s house to talk to her about their relationship.

Johnson stated that he had called B.B., but she would not answer, so he got upset. He told police he went to B.B.'s place to have sex so he could then go to sleep. Johnson explained that he brought the exercise bar because B.B. had a gun and often had other men over at her house. Johnson admitted to breaking the side door window, to telling X.B. to leave, and that he was upset

that B.B. did not take his phone calls. Johnson told the police that B.B. did allow him into her house, everything was fine between them, and he had broken out her window because he was upset. The police photographed the scene, including the broken doors and windows, the exercise bar, and pieces of B.B.'s synthetic hair.

{¶ 15} The jury convicted Johnson of all charges. The state filed a sentencing memorandum prior to sentencing. The trial court determined that the attempted rape did not merge with the burglary or the aggravated burglary but the aggravated burglary and the burglary merged. The state elected to proceed to sentencing on the aggravated burglary. The trial court sentenced Johnson to eight years for attempted rape, four years for aggravated burglary, twelve months for abduction, and 180 days for assault and criminal damaging. The court ordered the sentences for attempted rape and aggravated burglary to run consecutive to each other and concurrent to all other counts, for a total sentence of 12 years in prison.

*State v. Johnson*, 2018-Ohio-3999, 121 N.E.3d 776, 778-80 (Ohio Ct. App. 2018).

## II. Procedural History

### A. Trial Court Proceedings

On March 6, 2017, the Cuyahoga County Grand Jury indicted Johnson on the following charges: one count of attempted rape in violation of O.R.C. § 2923.02/2907.02(A)(2) (Count 1); one count of aggravated burglary in violation of O.R.C. § 2911.11(A)(1) (Count 2); one count of burglary in violation of O.R.C. § 2911.12(A)(1) (Count 3); one count of abduction in violation of O.R.C. § 2905.02(A)(2) (Count 4); one count of assault in violation of O.R.C. § 2903.13(A) (Count 5); and one count of criminal damaging or endangering in violation of O.R.C. § 2909.06(A)(1) (Count 6). (Doc. No. 7-1, Ex. 1.) The case proceeded to jury trial, and on September 22, 2017, the jury returned a verdict finding Johnson guilty as charged in the indictment. (Doc. No. 7-1, Ex. 8.)

On September 28, 2017, Johnson, *pro se*, filed a motion for a new trial alleging a conflict of interest with juror number 12. (Doc. No. 7-1, Ex. 9.) Johnson also filed a notice with the court requesting a direct appeal and/or re-trial based on an alleged speedy trial violation and a conflict of

interest with juror number 12.  (Doc. No. 7-1, Ex. 10.)  The State filed a response in opposition.  (Doc. No. 7-1, Ex. 11.)

On October 23, 2017, the trial court found no bias with juror number 12 and denied Johnson's motion for new trial.  (Doc. No. 7-1, Ex. 12.)  The trial court proceeded to sentencing.  (*Id.*)  The trial court determined that Counts 1 and 4 should merge for sentencing, and that Counts 2 and 3 should merge for sentencing.  (*Id.*)  The State elected to proceed on Counts 1 and 2.  (*Id.*)  The trial court sentenced Johnson to a total of 12 years in prison: eight (8) years in prison on Count 1 and four (4) years in prison on Count 2.  (*Id.*) Johnson received a 180-day jail sentence for Counts 5 and 6.  (*Id.*)  The trial court also determined Johnson to be a Tier III sex offender.  (*Id.*)

**B.**     **Direct Appeal**

Johnson, through counsel, filed a timely notice of appeal to the Eighth District Court of Appeals. (Doc. No. 7-1, Ex. 13.)  In his appellate brief, he raised the following assignments of error:

  I.  The trial court erred in failing to merge Appellant's convictions for attempted rape and aggravated burglary.

  II.  The trial court erred in imposing the maximum sentence of eight years on Count 1, i.e. attempted rape, a felony of the second degree.

 (Doc. No. 7-1, Ex. 14.)  The State filed a brief in response (Doc. No. 7-1, Ex. 15), to which Johnson replied.  (Doc. No. 7-1, Ex. 16.)

On September 27, 2018, the state appellate court affirmed Johnson's convictions.  (Doc. No. 7-1, Ex. 17.)  *See also State v. Johnson*, 2018-Ohio-3999, 121 N.E.3d at 778.

On November 9, 2018, Johnson, proceeding *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio.  (Doc. No. 7-1, Ex. 18.)  In his Memorandum in Support of Jurisdiction, Johnson raised the following Propositions of Law:

  I.  THE TRIAL COURT ERRED IN FAILING TO MERGE APPELLANT'S CONVICTION FOR ATTEMPTED RAPE AND AGGRAVATED BURBLARY [SIC].

II.    THE TRIAL COURT ERRED IN IMPOSING THE MAXIMUM SENTENCE
       OF EIGHT YEARS ON COUNT 1, I.E. ATTEMPTED RAPE, A FELONY OF
       THE SECOND DEGREE.

(Doc. No. 7-1, Ex. 19.)  The State did not file a response.

On January 23, 2019, the Supreme Court of Ohio declined to accept jurisdiction of the appeal

pursuant to S.Ct. Prac.R. 7.08(B)(4).  (Doc. No. 7-1, Ex, 20.)

**C.    Application to Reopen Appeal under Ohio App. R. 26(B)**

On October 9, 2018, Johnson filed an application to reopen pursuant to Ohio Appellate Rule 26(B)

in the Eighth District Court of Appeals.  (Doc. No. 7-1, Ex. 21.)  Johnson's application raised the

following arguments:

I.    APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS
      GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO
      THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF
      THE OHIO CONSTITUTION WHERE HIS APPELLATE COUNSEL
      OMITTED A DEAD BANG WINNER, PREJUDICING APPELLANT TO
      RECEIVING A FULL REVIEW BY THE COURT.

(*Id.*)

On October 22, 2018, Johnson moved for leave to supplement his application with additional

arguments, supporting authorities, and exhibits.  (Doc. No. 7-1, Ex. 22.)    In his supplement to his

application, Johnson raised the following arguments:

I.    APPELLANT'S CONVICTION FOR ATTEMPTED RAPE IS NOT
      SUPPORTED BY SUFFICIENT EVIDENCE IN VIOLATION OF DUE
      PROCESS UNDER THE FOURTEENTH AMENDMENT.

(*Id.*)  The State filed a brief in opposition (Doc. No. 7-1, Ex. 23), to which Johnson replied.  (Doc. No. 7-

1, Ex. 24.)

On August 6, 2019, the Eighth District Court of Appeals granted Johnson's motion for leave to

supplement his application for reopening and denied Johnson's application to reopen pursuant to App. R.

6

26(B).  (Doc. No. 7-1, Ex. 26-27.)  *See also State v. Johnson*, 2019-Ohio-3178, 2019 WL 3764605, at **1-4 (Ohio Ct. App. Aug. 6, 2019).

On September 10, 2019, Johnson filed a Notice of Appeal with the Supreme Court of Ohio.  (Doc. No. 7-1, Ex. 29.)   In his Memorandum in Support of Jurisdiction, Johnson raised the following Propositions of Law:

> I.  DEFENDANT-APPELLANT, JOHNSON WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION WHERE HIS APPELLATE COUNSEL OMITTED A DEAD BANG WINNER, PREJUDICING JOHNSON TO RECEIVING A FULL REVIEW BY THE COURT.
>
> II.  DEFENDANT-APPELLANT, JOHNSON'S APPELLATE COUNSEL WAS INEFFECTIVE FOR HIS FAILURE TO ASSIGN AS ERROR JOHNSON'S CONVICTION FOR ATTEMPTED RAPE WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE IN VIOLATION OF JOHNSON'S DUE PROCESS RIGHTS AS GUARANTEED UNDER BOTH THE UNITED STATES AND OHIO CONSTITUTIONS.

(Doc. No. 7-1, Ex. 30.)  The State did not file a response.

On November 12, 2019, the Supreme Court of Ohio declined to accept jurisdiction of this appeal pursuant to S. Ct. Prac. R. 7.08(B)(4).  (Doc. No. 7-1, Ex. 31.)

**D.  Federal Habeas Petition**

On December 30, 2019,[1] Johnson filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

> **GROUND ONE**:  Johnson was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution where his appellate counsel omitted his speedy trial issue.

---

[1]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until January 6, 2020, Johnson states that he placed it in the prison mailing system on December 30, 2019.  (Doc. No. 1 at 15.)  Thus, the Court will consider the Petition as filed on December 30, 2019.

**GROUND TWO**:  Johnson's appellate counsel was ineffective for his failure to assign as error Johnson's conviction for attempted rape was not supported by sufficient evidence.

**GROUND THREE**:  The trial court erred in failing to merge Johnson's conviction for attempted rape and aggravated burglary.

**GROUND FOUR**:  The trial court erred in imposing the maximum sentence of eight years on Count One (attempted rape).

(Doc. No. 1.)

On March 2, 2020, Respondent filed a Return of Writ arguing that Johnson's third and fourth grounds for relief had been procedurally defaulted and were not cognizable.  (Doc. No. 7.)  Respondent also argued that Johnson's first and second ground for relief were meritless.  (*Id.*)

On April 2, 2020, Johnson filed a Traverse. (Doc. No. 8.)

On October 29, 2020, Johnson filed a motion to expand the record. (Doc. No. 9.) Respondent opposed the motion.  (Doc. No. 11.)  On November 19, 2020, the Court denied Johnson's motion to expand the record, noting he had failed to identify what if any additional materials he sought to add to the record of this case, and explaining the Court could only consider evidence that was considered by the state court. (Doc. No. 12.)

On December 7, 2020, Johnson filed a motion for leave to amend his motion to expand the record. (Doc. No. 13.)  On February 17, 2021, Johnson filed a supplemental letter in support of this motion.  (Doc. No. 14.)  Respondent opposed the motion.  (Doc. No. 16.)

On April 15, 2021, the Court granted Johnson's motion for leave to amend his motion to expand the record.  (Doc. No. 17.)  The Court then granted in part and denied in part Johnson's motion to expand the record.  (*Id.*)  The Court granted the motion to expand with respect to the trial transcripts from the state court proceedings but denied the motion in all other respects.  (*Id.*)

### III. Exhaustion and Procedural Default

**A.     Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b), (c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways.  *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2]  *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848,

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law

10

or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). *See also Jones v. Bradshaw*, 489 F. Supp. 2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir. 2012).

**B.      Application to Petitioner**

Respondent asserts that Grounds Three and Four are procedurally defaulted as Johnson raised these claims solely as state law claims before the state appellate courts.  (Doc. No. 7 at 14.)  Respondent argues Johnson cannot show cause and prejudice or actual innocence to excuse the default.  (*Id.* at 14-15.)

In the memorandum attached to his Petition, Johnson included a section regarding procedural default where he invoked the actual innocence standard.  (Doc. No. 1-1 at 4-6.)  In his Traverse, Johnson stated he "would like to incorporate his argument on procedural default that is presented in his original Federal Habeas Corpus Petition in the above entitled case, and incorporates the same as if fully rewritten herein."  (Doc. No. 8 at 3.)

As another court in this Circuit recently explained:

> In order to have properly exhausted a federal habeas claim, the substance of the claim must have been presented to the state courts as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citations omitted). Rather, "the legal and factual basis of the claim must be 'fairly presented' to the state courts so that they have an opportunity to remedy the alleged constitutional violation." *Arnold v. Warden, Lebanon Corr. Inst.*, 832 F. Supp. 2d 853, 860 (S.D. Ohio 2011) (citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)).

*Owens v. Perry*, No. 1:17-cv-00105, 2019 WL 6250763, at *8 (M.D. Tenn. Nov. 22, 2019).

The record reflects Johnson raised his claims that the trial court erred in failing to merge his convictions for attempted rape and aggravated burglary and in imposing the maximum sentence of eight years for attempted rape solely as a matter of state law before the appellate court.  (Doc. No. 7-1, Ex. 14, 16.)  While Johnson invoked the Due Process Clause and alluded to federal Constitutional violations on appeal to the Supreme Court of Ohio (Doc. No. 7-1, Ex. 19), "under Ohio law, a constitutional question cannot ordinarily be raised before the Ohio Supreme Court unless it was first presented to the intermediate appellate court."  *Reed v. Jenkins*, Case No. 3:15-cv-00620, 2016 WL 6311235, at *6 (N.D. Ohio June 22,

12

2016) (citations omitted), *report and recommendation adopted by* 2016 WL 6393350 (N.D. Ohio Oct. 27, 2016).  As the Sixth Circuit has explained, "'The Ohio Supreme Court has stated that it will not consider constitutional claims not raised and preserved in the Ohio Court of Appeals.'"  *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985) (quoting *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir.1982) (additional internal citations omitted).  Therefore, Grounds Three and Four are procedurally defaulted unless there is cause and prejudice to excuse the default, or Johnson demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice.

### 1.      Cause and Prejudice

The Sixth Circuit has held that cause to excuse the procedural default of a habeas claim may exist if a petitioner's appellate counsel was ineffective in failing to raise the issue.  *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013); *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004); *Smith v. Ohio, Dept. of Rehab. and Corr.*, 463 F.3d 426, 432 (6th Cir. 2006); *Berry v. Warden, Southern Ohio Corr. Facility*, Case No. 3:14CV2518, 2016 WL 4177174, at *3 (N.D. Ohio Aug. 8, 2016).  However, the underlying claim of ineffective assistance of counsel must in and of itself not be in default.  *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (finding unless the state prisoner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, that claim cannot serve as cause for another procedurally defaulted claim).

While Johnson filed a 26(B) application, he did not raise appellate counsel's failure to present these arguments as federal claims as grounds for ineffective assistance of counsel.  (Doc. No. 7-1, Ex. 21-22.)  The record contains no evidence that there is cause and prejudice to excuse the procedural default of these ineffective assistance of appellate counsel claims.

A petitioner's *pro se* status or lack of legal training is insufficient to establish cause to excuse the procedural default of his ineffective assistance of counsel claims.  *Bonilla v. Hurley*, 370 F.3d 494, 498

(6th Cir. 2004).  As Johnson fails to show cause, the Court need not consider the prejudice prong.  *Smith v. Murray*, 477 U.S. at 533–34.

### 2. Actual Innocence

As noted above, a petitioner's procedural default may be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman*, 501 U.S. at 749–50.  In order to establish actual innocence, a habeas petitioner must show "factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup*, 513 U.S. at 324.  *See also Jones*, 489 F. Supp. 2d at 807; *Allen*, 2012 WL 3711552, at *7.  A petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *See Schlup*, 513 U.S. at 327.  "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Id*. at 316.

While Johnson invokes the actual innocence standard, he does not state he is actually innocent, nor does he present any new, reliable evidence of his innocence.  (Doc. Nos. 1, 1-1, 8.)  Therefore, the Court finds Johnson has failed to demonstrate the procedural default of Grounds Three and Four should be excused on the basis of actual innocence.

### IV. Non-Cognizability

Respondent argues that in addition to being procedurally defaulted, Grounds Three and Four must be dismissed as non-cognizable claims since habeas relief "'does not lie for errors of state law.'"  (Doc. No. 7 at 15-18.)

14

In response, Johnson "strongly asserts that the Respondent is in error with its conclusion of law" and "argues that his constitutional and due process rights under the United States Constitution were violated by an unfair, improper trial and sentencing proceeding." (Doc. No. 8 at 11, 14.)

It is well established that, in conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). As such, the Supreme Court has explained "it is not the province of a federal habeas court to reexamine state-court decisions on state-law questions." *Id*. at 67-68. *See also Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007); *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Stated another way, a state court's interpretation of state law is binding upon a federal habeas court. *See Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005); *Bibbs v. Bunting*, 1:16-cv-02069, 2017 WL 4083558, at *15 (N.D. Ohio May 17, 2017). *See also Thompson v. Williams*, 685 F. Supp. 2d 712, 721 (N.D. Ohio 2010) (stating "a federal court may not second-guess a state court's interpretation of its own procedural rules.") (citing *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir.1988)). "Federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 765, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). *See also Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.")

Therefore, in addition to being procedurally defaulted, Grounds Three and Four are also non-cognizable.

## V. Review on the Merits

**A.      Legal Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005).  Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012).  *See also Lopez v.Smith*, —— U.S. ——, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'" (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

16

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id. See also Shimel*, 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 F. App'x 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any

possibility for fairminded disagreement." *Id*. at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### 1. Grounds One and Two

In Ground One, Johnson claims that he was "denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendment [sic] to the United States Constitution and Article I, Section 10 of the Ohio Constitution where his appellate counsel omitted his speedy trial issue."  (Doc. No. 1 at 5.) Johnson argues this claim was a "dead bang winner" that should have been raised on appeal.  (Doc. No. 1-1 at 7.)  Johnson "asserts that the prosecutor and lower courts have miscalculated the days credited against the time period for which the state must bring Johnson to trial to comply with Johnson's constitutional right to have a fast and speedy trial as guaranteed by both the Ohio and United States Constitutions."  (*Id.* at 10.)

Respondent asserts that, under the doubly deferential standard on judicial review, Johnson fails to show the state court's judgment was contrary to or an unreasonable application of clearly established Supreme Court precedent.  (Doc. No. 7 at 23-30.)

In his Traverse, Johnson maintains that "[t]he main disagreement in the calculation of Johnson's speedy trial confinement is the time period that should be tolled for the defense that never answered the State's demand for discovery."  (Doc. No. 8 at 4.)  Johnson asserts Respondent argues that all the time from April 14, 2017 to the trial date should be tolled, while Johnson maintains that such a long period of tolling would be "not only unfair but also unjust and a violation of Johnson's constitutional and due process rights."  (*Id.*)

In Ground Two, Johnson argues his "appellate counsel was ineffective for his failure to assign as error Johnson's conviction for attempted rape was not supported by sufficient evidence."  (Doc. No. 1 at

7.)  Johnson argues the testimony of the victim, B.B., and her minor son, X.B., were inconsistent, and asserts that "[t]he record in this case herein is riddled with conflicting non-supporting testimony proving that Johnson's conviction was not supported by the state proving the essential elements of the offenses of attempted rape."  (Doc. No. 1-1 at 19.)

Respondent asserts that, under the doubly deferential standard on judicial review, Johnson fails to show the state court's judgment was contrary to or an unreasonable application of clearly established Supreme Court precedent.  (Doc. No. 7 at 23-30.)

The record reflects Johnson raised these ineffective assistance of counsel claims to both the state appellate court and the Supreme Court of Ohio.  (Doc. No. 7-1, Ex. 21-22, 30.)  The state appellate court considered these claims on the merits and rejected it as follows:

> {¶ 6} In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); and *State v. Reed,* 74 Ohio St.3d 534, 1996-Ohio-21, 660 N.E.2d 456.

> {¶ 7} In *Strickland,* the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689.

> {¶ 8} Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes,* 463 U.S. 745, 751-752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Indeed, including weaker arguments might lessen the impact of

19

the stronger ones. Accordingly, the court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in *State v. Allen,* 77 Ohio St.3d 172, 1996-Ohio-366, 672 N.E.2d 638.

{¶ 9} Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.

{¶ 10} Johnson first argues that his appellate counsel should have argued denial of speedy trial. R.C. 2945.71(C)(2) requires that the state bring a person charged with a felony to trial within 270 days after the person's arrests. Under subsection (E), each day the person is held in jail counts as three days. However, this time period may be waived, extended, or tolled under R.C. 2945.72. Subsection (C) provides that the time may be extend by "[a]ny period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law." "Any period of delay occasioned by the neglect or improper act of the accused" would also toll the time period. R.C. 2945.72(D). For example, the speedy trial calculation is tolled after a reasonable time has elapsed for a defendant to respond to the state's discovery request; the time is tolled while the state awaits the defendant's responses. *State v. Palmer,* 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011; and *State v. Mitchell,* 8th Dist. Cuyahoga No. 88977, 2007-Ohio-6190. Similarly, any "delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused" tolls the period. R.C. 2945.72(E). A defendant's demand for discovery tolls the speedy-trial time for a reasonable time, usually considered 30 days, for the state to fulfill the discovery request or until the state responds, whichever is sooner. *State v. Shabazz,* 8th Dist. Cuyahoga No. 95012, 2011-Ohio-226o, and *State v. Jones,* 8th Dist. Cuyahoga No. 106150, 2019-Ohio-783.

{¶ 11} Finally, subsection (H) provides that the period is tolled by "any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." Thus, any continuance granted at the defendant's request tolls the period. *State v. Brelo,* 8th Dist. Cuyahoga No. 79580, 2001-Ohio-4245, and *State v. Ferrell,* 8th Dist. Cuyahoga No. 93003, 2010-Ohio-2882. This includes the time necessary for new defense counsel to prepare for trial. *State*

*v. Christian,* 7th Dist. Mahoning No. 12 MA 164, 2014-Ohio-2590. The court further notes that defense counsel's actions in waiving the time period is attributable to the defendant, even if the defendant did not consent to the waiver. *State v. McBreen,* 54 Ohio St.2d 315, 376 N.E.2d 593 (1978). Scheduling and docketing conflicts are reasonable grounds for extending an accused's trial date beyond the speedy trial limit date. *State v. Gibson,* 8th Dist. Cuyahoga No. 100727, 2014-Ohio-3421.

{¶ 12} Johnson never made bail, so each day is subject to the triple-count provisions. If he can establish that more than 90 days elapsed after allowing for all waivers and extensions, his claim may have merit. The time for speedy trial begins to run when the accused is arrested, but the actual day of arrest is not counted. *State v. Canty,* 7th Dist. Mahoning No. 08-MA-1565, 2009-Ohio-6161.

{¶ 13} An examination of the docket and the transcript demonstrates that Johnson was not denied his right to a speedy trial under Ohio law. The police arrested Johnson on February 24, 2017. On March 2 and March 9, the trial court accepted Johnson's plea of not guilty, declared him indigent, appointed counsel, and set bond. On March 13, 2017, the state received the defendant's demand for discovery. Thus, the 17 days from February 24, to March 13, 2017, counted toward the speedy-trial time.

{¶ 14} Under the principles of tolling, state must fulfill discovery within a reasonable time, usually considered 30 days or until the state complies with the request. Thirty days from March 13, would be April 12, 2017. However, the state responded to discovery on March 15, 2017, at which time it made its own demand for discovery, and April 5, 2017. Thus, speedy-trial time was tolled until April 5, 2018.

{¶ 15} From April 5, 2017, until May 8, 2017, there were two pretrials held and trial was scheduled for May 8, 2017, but the record does not specify that continuances were granted at defendant's request. On May 8, 2017, the trial court entered on the docket that the trial scheduled for May 8, 2017, was rescheduled to May 12, 2017, at defendant's request. In a favorable light to Johnson, the 33 days from April 5, to May 8, 2017, counted toward the speedy-trial time for a total of 50 days.

{¶ 16} There is no entry for May 12, 2017, the scheduled trial date. The next docket entry, dated May 16, 2017, states the previously scheduled trial was rescheduled to June 15, 2017, at defendant's request. Thus, four more days counted toward the speedy-trial time for a total of 54.

{¶ 17} While awaiting trial, Johnson filed a pro se motion to disqualify his attorney on May 22, 2017. At a pretrial on June 8, 2017, the judge conducted a hearing on the motion to remove counsel, and Johnson agreed to keep his attorney. The trial judge, the prosecutor, and defense counsel then agreed to a

back-up trial date of July 5, 2017. (Tr. 40-41.) Thus, the record shows that the speedy-trial time was tolled until July 5, 2017. *State v. Martin,* Slip Opinion No. 2019-Ohio-2010.

{¶ 18} On July 5, 2017, another pretrial was held on the record and showed that the trial judge and defense counsel were engaged in trial on the previously scheduled trial date, providing another reason for tolling the speedy-trial time. (Tr. 45 and 61.) At that time the trial date was continued to July 24, at defendant's request.

{¶ 19} On July 17, 2017, Johnson filed a notification with the court that he had filed a grievance against his attorney. At the pretrial on July 24, defense counsel explained that she could no longer represent Johnson, because he had filed a grievance against her, and the trial judge agreed. In a journal entry filed on July 25, 2017, the judge appointed new counsel and noted that the pretrial was set for July 31, 2017, at defendant's request. Allowing new defense counsel the reasonable time of 30 days to prepare for trial would toll the speedy-trial time to August 24, 2017.

{¶ 20} The docket shows that the entry for July 25, 2017, set the next pretrial for July 31, 2017, at defendant's request. The July 31, 2017 docket entry continued the pretrial until August 15, 2017, at defendant's request. The docket entries from August 15, to the start of trial on September 19, 2017, do not include the notation of continued at defendant's request.

{¶ 21} From August 24, 2017, to September 19, 2017, 26 days elapsed that counted toward the speedy-trial time; $54 + 26 = 80$. Thus, the records shows that Johnson's right to a speedy trial was not violated. Even adding the nine days from August 15, 2017, the last notation of continued at defendant's request, to the 26 days until trial still brings Johnson to trial with the 90 days. In its argument before the trial judge on Johnson's motion to dismiss for lack of a speedy trial, that state submitted that because of discovery and Johnson's own motions, almost all of the time from March 13, 2017, to May 8, 2017, was tolled. Alternatively, as Johnson admits in his reply brief, the defense never answered the state's demand for discovery. Thus, all of the time from April 14, 2017, until the trial date could be considered tolled.

{¶ 22} Although it may be possible to construe the docket in such a way that it would appear that more than 90 speedy-trial days had elapsed, appellate counsel in the exercise of professional judgment properly rejected this argument, because the above review of the record shows that less than 90 days of speedy trial had elapsed.

{¶ 23} Johnson's second argument, that his trial counsel were ineffective for not seeking his discharge, is a reformulation of his speedy-trial argument through the lens of ineffective assistance of counsel. Because the initial argument was not well-founded, this restatement is also not well-founded.

22

{¶ 24} Finally, appellate counsel in the exercise of professional judgment properly rejected an insufficiency of the evidence argument. The testimony of the victim was sufficient evidence to support the convictions.

*State v. Johnson*, 2019-Ohio-3178, 2019 WL 3764605, at \*\*1-4.

In order to establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair. *Id*. To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *Id.* at 689. *See also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

As explained by the United States Supreme Court:

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem,

23

> review is "doubly" so, *Knowles*, 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at105. *See also Kennedy v. Warren*, 428 Fed. Appx 517, 520 (6th Cir. May 3, 2011); *Phillips v. Sheldon,* 2014 WL 185777, at **14-15 (N.D. Ohio Jan. 16, 2014).

The Supreme Court has held a defendant is entitled to effective assistance of counsel in his first appeal as a matter of right. *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Thus, the two-part test enunciated in *Strickland* is applicable to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). *See also Hand v. Houk*, 871 F.3d 390, 410 (6th Cir. 2017). An appellant has no constitutional right, however, to have every non-frivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel. *See Perry*, 908 F.2d at 59. Indeed, as the Sixth Circuit recently explained, the "'[m]ere failure to raise a potentially viable claim is not enough, as '[a]ppellate counsel need not raise every non-frivolous claim on direct appeal.'" *Hand*, 871 F.3d at 410 (quoting *Sanders v. Curtin*, 529 Fed. Appx. 506, 521 (6th Cir. 2013)). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

### a. Speedy Trial

Here, Johnson argues appellate counsel was ineffective for failing to argue his speedy trial rights were violated under both state and federal law. Under Ohio's speedy trial statute, "[a] person against

whom a charge of felony is pending. . . shall be brought to trial within two hundred seventy days after the person's arrest." Ohio Rev. Code §2945.71(C)(2).  That statute further provides, however, that: "For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." Ohio Rev. Code § 2945.71(E).  In the instant case, the state appellate court determined (and Johnson does not contest) that Johnson was held in jail during the pendency of the proceedings against him and, thus, the State was required to try him within 90 days.

The state appellate court carefully reviewed the record and determined only 80 days counted towards the 90-day time limit, properly running the speedy trial clock from Johnson's February 24, 2017 arrest.  Johnson has not drawn this Court's attention to any irregularity in the state appellate court's calculation and application of Ohio's speedy trial statute, nor does this Court perceive any clear error.[3]  As such, the Court finds the state appellate court reasonably concluded appellate counsel's failure to raise a state speedy trial claim cannot have resulted in ineffective assistance.  Counsel was not required to raise assignments of error that did not have a reasonable probability of changing the result of Johnson's appeal. *See Hand*, 871 F.3d at 410 (finding the "'[m]ere failure to raise a potentially viable claim is not enough, as '[a]ppellate counsel need not raise every non-frivolous claim on direct appeal.'"); *Sanders*, 529 F. App'x at 521 (same).

Johnson also implies that appellate counsel should have raised on appeal an alleged violation of his federal constitutional right to a speedy trial under the Sixth Amendment.[4]  The Sixth Amendment to the

---

[3] Johnson argues the state appellate court incorrectly tolled days against him for purposes of his speedy trial calculation and takes issue with the state appellate court's alternative determination regarding defense counsel's failure to respond to the State's request for discovery as a matter of state law.  As noted above, however, a state court's interpretation of state law binds a federal court sitting in habeas corpus.  *See Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67-68.
[4] The Court is not convinced that Johnson fairly presented his ineffective assistance claim based on a federal speedy trial violation to the state courts.  Although he referenced the Sixth Amendment in his

United States Constitution, made applicable to the States through the Fourteenth Amendment, guarantees a defendant a "speedy and public trial."  U.S. Const. Amend. VI; *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). "The purpose of the speedy-trial guarantee is to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that evidence will be lost or memories diminished." *Brown v. Romanowski*, 845 F.3d 703, 712 (6th Cir. 2017).  *See also Doggett v. United States*, 505 U.S. 647, 654, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); *Barker*, 407 U.S. at 532-33.

In *Barker,* the Supreme Court established a balancing test in which the conduct of both the State and the defendant are weighed to assess whether a speedy trial violation has occurred based on the length of delay between the date of indictment or arrest (whichever is earlier) and the date of trial.  *Barker,* 407 U.S. at 530.  *See also United States v. Marion*, 404 U.S. 307, 320–21, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).  The following four factors are to be considered under this balancing test: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant.  *Barker*, 407 U.S. at 530.  *See also Doggett*, 505 U.S. at 651; *Brown*, 845 F.3d at 712.

To trigger a speedy trial analysis under the four-factor balancing test, the defendant first must first demonstrate that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett*, 505 U.S. at 651–52; *Barker*, 407 U.S. at 530. "The length of the delay is a threshold requirement. If the length of the delay is not 'uncommonly long,' then judicial examination ends." *Maples v. Stegall*, 427 F.3d 1020, 1025–26 (6th Cir.2005) (quoting *Doggett*,

---

26(B) Application, Johnson did not cite any federal authority or otherwise discuss any of the factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), discussed *infra*. In light of Johnson's *pro se* status both during his 26(B) proceedings and herein, the Court will nonetheless consider and address his ineffective assistance claim based on the failure to assert a federal speedy trial violation.

505 U.S. at 652). *See also Wilson v. Mitchell*, 250 F.3d 388, 394 (6th Cir.2001) (delay is considered the "triggering" factor). Delays approaching one year are considered presumptively prejudicial, while delays of a lesser duration are not *per se* excessive. *See Doggett*, 505 U.S. at 652, n. 1. *See also Brown*, 845 F.3d at 713 (finding a five month delay is not "uncommonly long" and would not trigger analysis of the remaining *Barker* factors); *United States v. White*, 985 F.2d 271, 275 (6th Cir.1993) (six-and-one-half month delay not presumptively prejudicial); *United States v. Howard*, 218 F.3d 556, 564 (6th Cir.2000) (delay of five months not *per se* excessive).

Here, Johnson was arrested on February 24, 2017. He was brought to trial on September 19, 2017, which is a little under seven months after his arrest. The delay is well under a year and, therefore, not presumptively prejudicial. *See Brown*, 845 F.3d at 713; *White*, 985 F.2d at 275; *Howard*, 218 F.3d at 564.

Nonetheless, assuming, *arguendo*, that the length of the delay could be considered prejudicial, the remaining *Barker* factors do not weigh in favor of Johnson. The second *Barker* factor is the reason for the delay. In assessing this factor, "the court considers who is most at fault—the government or the defendant." *Brown*, 845 F.3d at 714. *See also United States v. Schreane*, 331 F.3d 548, 554 (6th Cir. 2003). "Governmental delays motivated by bad faith, harassment or attempts to seek a tactical advantage weigh heavily against the government." *Schreane*, 331 F.3d at 553. Negligence and unexplained delay also weigh against the government, albeit less heavily, "'but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.'" *Id.* at 554 (quoting *Barker*, 407 U.S. at 531, 92 S.Ct. 2182).

Here, the state court docket reflects Johnson contributed to the delay by a number of pre-trial motions, including motions to continue the trial date, as well as a motion to disqualify his attorney, which tolled the speedy trial clock for 44 days. The second *Barker* factor, therefore, does not weigh in Johnson's favor.

27

The third factor (*i.e.*, whether the defendant asserted his speedy trial rights) weighs in Johnson's favor, as the record reflects he filed a notice with the court requesting a direct appeal and/or re-trial based on the alleged speedy trial violation on September 28, 2017.  (Doc. No. 7-1, Ex. 10.)  However, the last *Barke*r factor, prejudice, does not weigh in Johnson's favor.  As the Sixth Circuit has explained, this factor "should be assessed 'in the light' of three interests: (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern, and (3) to minimize damage to the defense." *Barker*, 407 U.S. at 532.  *See also Brown*, 845 F.3d at 716.  Here, Johnson makes no argument as to how he was prejudiced by any perceived delay in bringing him to trial.  Under these circumstances, the Court finds that appellate counsel's failure to raise a federal constitutional speedy trial claim cannot have resulted in ineffective assistance, as there is no reasonable probability that Johnson could have prevailed on this issue on appeal.

Accordingly, and for all the reasons set forth above, the Court finds the state appellate court reasonably concluded appellate counsel was not ineffective for failing to raise state and/or federal speedy trial claims on direct appeal. It is therefore recommended Johnson's first ground for relief be denied.

### b.  Sufficiency of the Evidence

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).  The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses.  *Id.  See also Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Moreover, federal courts are

required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record ... should be resolved in favor of the prosecution." *Heinish v. Tate*, 1993 WL 460782 at *3 (6th Cir. 1993) (citing *Walker*, 703 F.3d at 969–70.) *See also Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Consistent with these principles, the Supreme Court has emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (*per curiam*).   And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, —— —, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012).  Under this standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e ... inquire whether any rational trier of fact would conclude that petitioner ... is guilty of the offenses with which he is charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Id.* (emphasis in original) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)).

Upon careful review of the trial transcript, the Court finds the state appellate court reasonably determined Johnson's conviction for attempted rape was supported by sufficient evidence.  Detective

Mathis, first on the scene, heard a female scream for help shortly after he arrived on scene and found Johnson standing naked outside B.B.'s apartment, banging on the door. (Doc. No. 18 at PageID #748-49, 752-54.) Detective Mathis heard Johnson tell B.B., "If you give me some pussy I will leave you alone." (*Id.* at PageID #755.) Johnson also told Detective Mathis that if B.B. "just gave him some pussy" he would have left her alone. (*Id.* at PageID #756.) B.B.'s nightgown was found outside the apartment in the driveway. (*Id.* at PageID #797-98.) B.B. testified that Johnson ripped off her nightgown, tried to pin her down and restrain her while he removed his own clothes, that she tried to bite and scratch him and get away, and the only thing that kept Johnson from raping her was the police showing up when they did. (*Id.* at PageID #994, 996-98, 903, 1026.) X.B. testified that afterwards, while the police were arresting Johnson, he saw his mother naked, crying, and with pulled hair. (*Id.* at PageID #911.)

While Johnson asserts there was insufficient evidence based on his interpretation of B.B.'s and X.B.'s credibility and the alleged inconsistency of their testimony, it is not for this Court to weigh evidence or determine credibility. *See Jackson*, 443 U.S. at 317-19; *Coleman*, 566 U.S. at 651. While Johnson interprets evidence in a light most favorable to him, that is not the standard – the Court must view the evidence in a light most favorable to the prosecution. *Jackson*, 443 U.S. at 319.

Accordingly, and for all the reasons set forth above, the Court finds the state appellate court reasonably concluded appellate counsel was not ineffective for failing to raise a sufficiency of the evidence argument on appeal. It is therefore recommended Johnson's second ground for relief be denied.

### VI. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DISMISSED IN PART AND DENIED IN PART.

Date: November 29, 2021                          *s/ Jonathan Greenberg*
                                                 Jonathan D. Greenberg
                                                 United States Magistrate Judge

## <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).